IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                        NO. 4:07CR00126 JLH

ERIC WAYNE KELLEY                                                                            DEFENDANT

**OPINION AND ORDER**

Eric Wayne Kelley was indicted on five counts of possessing child pornography in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). He filed a motion to suppress the evidence, which was seized during a search of his home in the early morning hours of November 11, 2005. For the reasons stated hereinafter, the motion to suppress is denied.

On November 7, 2005, the Sherwood Police Department received information from the United States Marshals Service that an individual by the name of Eric Wayne Kelley was residing at 101C Audubon Cove in Sherwood and was wanted in Texas for warrants involving sexual offenses committed on children. According to the information provided by the United States Marshals Service, Kelley was having sexual relations with a boy who was possibly of Middle Eastern descent and who was approximately eleven or twelve years of age. The Marshals Service provided the Sherwood Police Department with a copy of the photograph of Eric Wayne Kelley taken for his Texas driver's license in 1995. An investigation by the Sherwood Police Department revealed that the person living at 101C Audubon Cove was using the name Melvin Eugene Kelley. The Arkansas drivers' license photograph of Melvin Eugene Kelley was obtained, and it matched the photograph of Eric Wayne Kelley taken for his Texas drivers' license.

Late in the afternoon on November 10, 2005, Officer Kevin Webb observed a man leave 101C Audubon Cove with a boy who appeared to be of Middle Eastern descent, get into a black Nissan Maxima that was registered to Melvin Kelley, and drive away from the residence. Because he had reasonable suspicion that the occupant of the vehicle was wanted on a felony warrant in Texas, Webb decided to stop the vehicle. He also observed the vehicle cross the center line twice before he made the stop. Soon after he stopped the vehicle, Officer Webb was joined by Sherwood Detective Ben Skeel and Sergeant William Michaels. When Webb asked Kelley for his identification, Kelley stated that he did not have his identification with him and identified himself as Melvin Kelley with a date of birth of December 31, 1962. He also identified the passenger as his nephew. Michaels approached the passenger and asked how he knew Kelley, and the passenger stated that Kelley was his friend. Michaels asked the passenger how old he was, and the passenger told Michaels that he was twelve years old. Kelley was shown the photograph from Texas identifying him as Eric Wayne Kelley, and he confirmed that that was his photograph. Kelley was placed under arrest and taken to the Sherwood Police Department.

The juvenile also was taken to the Sherwood Police Department, and his mother was called to come there. With permission from the juvenile's mother, Sergeant Jeff Hagar interviewed the juvenile. The juvenile stated that he had known Kelley for approximately two years, and that Kelley had performed oral sex on him approximately ten to twenty times over the course of the previous year. The juvenile stated that Kelley had taken nude photographs of him and kept them in his residence. He also stated that he had seen the photographs on Kelley's digital camera and believed that the photographs had been downloaded onto Kelley's computer in his bedroom. The juvenile also said that Kelley had shown him pornographic tapes that he kept in his residence.

Sergeant William Michaels prepared an affidavit for a search warrant including the information stated above, and the affidavit was presented to District Judge Milas H. Hale, III, shortly after midnight. The affidavit included the following statement, "I also request that the warrant to be executed anytime day or night due to the facts that the objects to be seized are in danger of imminent removal." The affidavit did not state the basis for Michaels's belief that the items to be seized were in danger of imminent removal. When asked by Judge Hale about the basis for the believe that the items were in danger of imminent removal, Michaels informed Judge Hale that Kelley had been adamant that he needed to call his sister for his sister to go to the apartment and bring him some medication for his eyes. The Sherwood Police Department had had another instance in which a suspect was taken into custody, was allowed to make a telephone call, and then evidence was removed from the home before a search warrant could be obtained and executed. Judge Hale accepted the explanation for the request for a nighttime search warrant and issued the warrant with the authorization for the warrant to be executed anytime day or night due to the fact that the objects to be seized were in danger of imminent removal.

Officers of the Sherwood Police Department executed the search warrant at 101C Audubon Cove in the early morning hours of November 11, 2005, shortly after Judge Hale issued the warrant. No one was home. Officers used a key taken from Kelley when he was placed in custody. They found Kelley's computer in the upstairs bedroom, where the juvenile had said it would be. It was operating when they found it and appeared to be running programs related to child pornography. Photographs of the computer screen showing the files that were being processed were taken between 2:08 a.m. and 2:12 a.m. The officers seized various items of computer equipment, along with more than 400 CDs and DVDs. The seized items were turned over to the Federal Bureau of Investigation.

The FBI obtained search warrants, performed forensic analyses of the items seized, and found a large quantity of child pornography.

Kelley was charged and convicted of rape in the Circuit Court of Pulaski County. On appeal, he challenged the search warrant. The Supreme Court of Arkansas held that the warrant was supported by probable cause but did not contain sufficient factual basis to justify a nighttime search and therefore reversed and remanded for a new trial. *Kelley v. State*, 371 Ark. 599, 269 S.W.3d 326 (2007). On retrial, Kelley was again convicted. He was sentenced as an habitual offender with two prior felony convictions to forty-seven years imprisonment. He again appealed, and the Supreme Court of Arkansas affirmed. *Kelley v. State*, No. CR 08-1502, 2009 WL 1819336 (Ark. Jun. 25, 2009).

Here, Kelley argues that evidence seized from his apartment must be suppressed for three reasons. First, he argues that there was no basis for the traffic stop by Officer Webb. Secondly, he argues that the information in the search warrant was insufficient to establish probable cause to search his home and particularly insufficient to justify the nighttime search. Thirdly, he argues that the search of the computer in his home was beyond the scope of the search warrant.

On the first issue, Officer Webb had two reasons for stopping Kelley. First, Kelley drove left of the center line on two occasions. Officer Webb, whose testimony the Court accepts as true, saw Kelley drive left of the center line twice. Although Kelley contends that he did not drive left of the center line, he also testified that he dodged potholes while he was driving on the evening of the stop, so his testimony to that extent is consistent with Webb's observations. Any traffic violation, even a minor one, gives an officer probable cause to stop the motorist. *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998). Webb had probable cause for a traffic stop because Kelley committed a traffic violation.

Moreover, Webb had a reasonable suspicion that Kelley was wanted on a felony warrant in Texas. As noted above, the Sherwood Police Department had received information from the United States Marshals Service that Eric Wayne Kelley was wanted on warrants for child sexual offenses in Texas. The Marshals Service provided the Sherwood Police Department with information that Kelley was residing at 101C Audubon Cove in Sherwood and that he was having sexual relations with a boy who appeared to be of Middle Eastern descent and who was eleven or twelve years of age. The investigation by the Sherwood Police Department confirmed that a man resided at 101C Audubon Cove under the name of Melvin Eugene Kelley. The officers obtained a copy of the driver's license photograph of Melvin Eugene Kelley, matched the photograph to that of Eric Wayne Kelley from Texas, and confirmed that they were the same person. Late in the afternoon on November 10, 2005, Officer Webb saw a man and a boy who appeared to match the description provided by the Marshals Service leave 101C Audubon Cove and drive away in a vehicle registered to Melvin Eugene Kelley. "When police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *United States v. Kent*, 531 F.3d 642, 650 (8th Cir. 2008) (quoting *United States v. Hensley*, 469 U.S. 221, 229, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985)). Webb had a reasonable suspicion, grounded in specific and articulable facts, that the driver of the vehicle he stopped was Eric Wayne Kelley who was wanted on felony warrants in Texas. Therefore, the traffic stop was constitutionally permissible.

Kelley's next argument is that the affidavit for the search warrant did not contain sufficient facts to support probable cause for a search. "Probable cause to issue a search-warrant exists when the supporting affidavit sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United*

*States v. Lakoskey*, 462 F.3d 965, 977 (8th Cir. 2006). "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527 (1983) (internal quotations omitted). Here, there is no doubt that the facts surrounding Kelley's arrest and the juvenile's statement that Kelley had nude pictures of him on Kelley's computer and digital camera established probable cause for a search of Kelley's apartment. *Kelley*, 371 Ark. at 608, 269 S.W.3d at 332.

The issue with respect to the nighttime search is a bit different. The Supreme Court of Arkansas held that the nighttime search violated Arkansas rules of criminal procedure because the basis for the nighttime search was not articulated in the affidavit for the warrant, nor was the testimony stating the basis for the nighttime search recorded. *Id.* at 604-07, 269 S.W.3d at 330-32.

"In determining whether evidence obtained solely by state officers is admissible in federal court in the first instance, it is usually irrelevant whether a state rule of criminal procedure was violated." *United States v. Maholy*, 1 F.3d 718, 721 (8th Cir. 1993). The legality of such a search is governed by the Fourth Amendment, not by state law. *Id.* Even when a motion to suppress was granted in an earlier state prosecution, that determination does not affect the issue of whether the evidence will be suppressed in a federal prosecution. *United States v. Appelquist*, 145 F.3d 976, 978 (8th Cir. 1998); *United States v. Friend*, 50 F.3d 548, 551 (8th Cir. 1995), *vacated on other grounds*, 517 U.S. 1152, 116 S. Ct. 1538, 134 L. Ed. 2d 643 (1996). In *United States v. Maholy*, the Eighth Circuit also declined to apply Rule 41(c)(1) of the Federal Rules of Criminal Procedure to a search conducted entirely by state officers. *Maholy*, 1 F.3d at 721 n.4. Here, there was no federal involvement in obtaining or executing the search warrant. While executing the search warrant, the Sherwood police officers made a telephone call to an officer of the FBI to obtain guidance on how

to handle the computer equipment that was to be seized, but that was the only involvement by federal officials on the evening of November 10 and the morning of November 11, 2005.

Case law is sparse as to precisely what the Fourth Amendment requires be stated in an application for a warrant for a nighttime search. 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.7 (4th ed. 2004). The rationale for heightened scrutiny of nighttime searches was stated by Justice Marshall:

> In my view, there is no expectation of privacy more reasonable and more demanding of constitutional protection than our right to expect that we will be let alone in the privacy of our homes during the night. The idea of the police unnecessarily forcing their way into the homes in the middle of the night–frequently, in narcotics cases, without knocking and announcing their purpose–rousing the residents out of their beds, and forcing them to stand by in indignity in their night clothes while the police rummage through their belongings does indeed smack of a "police state' lacking in the respect for . . . the right of privacy dictated by the U.S. Constitution.' S. Rep. No. 91-538, p. 12 (1969).

*Gooding v. United States*, 416 U.S. 430, 462, 94 S. Ct. 1780, 1796, 40 L. Ed. 2d 250 (1974) (Marshall, J., dissenting). Here, no one was home when the search warrant was executed. No one was disturbed in the middle of the night. To the extent that Kelley's privacy was invaded by the search, that intrusion was no greater than if the warrant had been executed during daylight hours.

When a search is governed by Rule 41 of the Federal Rules of Criminal Procedure, the exclusionary rule applies only if the defendant is prejudiced in the sense that the search might not have occurred or would not have been so abrasive had proper procedures been followed, or if reckless disregard of proper procedure is evident. *United States v. Harris*, 324 F.3d 602, 606 (8th Cir. 2003); *United States v. Berry*, 113 F.3d 121, 123 (8th Cir. 1997); *United States v. Bieri*, 21 F.3d 811, 816 (8th Cir. 1994); *United States v. Burgard*, 551 F.2d 190, 193 (8th Cir. 1977); *United States v. Burke*, 517 F.2d 377, 386-87 (8th Cir. 1975). Although Rule 41 does not apply to this case, the

Court will be guided by the Eighth Circuit cases addressing the issue of whether to apply the exclusionary rule when Rule 41 has been violated.

Here, the Sherwood Police Department had probable cause for the search and a valid, reasonable basis for requesting a nighttime search. Kelley had been adamant about needing to make a telephone call to someone who could go to his home and retrieve medicine for him. Kelley was a fugitive from Texas, wanted in Texas on charges of child sexual molestation. He had with him at the time of his arrest a juvenile who matched the description of someone with whom he was said to be having sexual relations, and the juvenile confirmed information that had been provided to the Sherwood Police Department. The juvenile provided specific and detailed information leading the Sherwood Police Department to believe that evidence of child pornography would be found in Kelley's possession in his apartment. When Kelley was stopped, he lied about his identity, and he lied about his relationship with the juvenile who was the passenger in his vehicle. In view of this information, the Sherwood Police Department had reasonable cause to believe that Kelley would arrange for evidence to be destroyed or removed if given the opportunity to do so. No one was home, and no one was disturbed by the search. *United States v. Butler*, 2000 WL 134697, at *10 (D. Kan. Jan. 21, 2000). The search certainly would have occurred if Michaels had fully stated the basis for the nighttime search in the affidavit or if he had waited until the daylight hours to obtain and execute the warrant. Furthermore, there is no reason to believe that the search would have been or could have been less abrasive under other circumstances. From Kelley's standpoint, he was better off to have the search take place as soon as possible, so that the Sherwood Police Department then could allow him to make a telephone call and have someone retrieve his medication if needed. Kelley suffered no prejudice as a result of the fact that the search occurred at night rather than during daylight hours.

Nor did the officers manifest reckless disregard for proper procedures. Michaels, who prepared the affidavit for the warrant application, did not go to a judge's home at 12:50 a.m. for authorization with the idea that the warrant could be executed during business hours. He obviously felt some exigency, or he would not have taken the time to prepare the affidavit during the middle of the night, nor would he have gone to the judge's home to wake the judge at that time. He obviously believed that it was important for the search to be executed as soon as possible. He requested authorization for a nighttime search and answered the judge's questions as to why a nighttime search was necessary. The judge gave the authority for a nighttime search. When Michaels and other officers then executed the nighttime search, based on the authority given by Judge Hale, they did not act in bad faith and therefore did not recklessly disregard proper procedure. *Berry*, 113 F.3d at 123; *United States v. Schoenheit*, 856 F.2d 74, 77 (8th Cir. 1988).

Furthermore, because the officers reasonably believed that they had a valid warrant for a nighttime search, the good faith exception to the exclusionary rule would apply even if the nighttime search was improper. *Berry*, 113 F.3d at 124; *Schoenheit*, 856 F.2d at 77. Although the Court may not look outside the affidavit to determine probable cause, when assessing good faith the Court looks at the totality of the circumstances, which in this case includes what Sergeant Michaels knew but did not include in the affidavit. *See United States v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987). Based on the totality of the circumstances, including what Michaels knew but did not include in his affidavit, Michaels's reliance on Judge Hale's approval of the nighttime search was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate. *See id*.

Finally, Kelley contends that the officers searched his computer when they entered his home in the morning of November 11, 2005, and that their search exceeded the scope of the warrant. The officers testified that they did not search Kelley's computer. They testified that it was running when

9

they entered the home. They called an FBI agent who told them simply to unplug it, box it up, and bring it back. They testified that they complied with those directions. While they were preparing to do so, they saw that the computer was running through programs that appeared to relate to child pornography, and they took photographs of the screen. Kelley attempted to rebut that testimony by pointing to changes in the place of the cursor from photograph to photograph. He also says that the program could not have performed what the photographs show that it performed without intervention by a person manipulating the mouse. As between the testimony of the officers and the testimony of Kelley, the Court believes the officers. Kelley admittedly lied about his identity when he obtained an Arkansas identification (in an effort to avoid apprehension on felony warrants in Texas). He lived in Arkansas under an assumed name, and he lied to Officer Webb when he was stopped. He has little credibility. On the other hand, it makes no sense for the officers to manipulate the computer, take photographs proving that they were manipulating the computer, and then offer those photographs as evidence, while denying that they manipulated the computer. Consequently, the Court rejects Kelley's contention that the officers searched the computer and executed the warrant in the early morning of November 11, 2005.

## CONCLUSION

For all of these reasons, the motion to suppress is DENIED. Document #44.

IT IS SO ORDERED this 16th day of November, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE